# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CARIBBEAN UTILITIES COMPANY, LTD.**                        **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO. 2:17-cv-00179-KS-MTP**

**HOWARD INDUSTRIES, INC., a Mississippi**
**profit corporation,**                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause came before the Court on Defendant's Motion to Exclude Ken Lefoldt's Damages Opinions [106]. The motion has been fully briefed [122, 136]. Having reviewed the parties' submissions, the relevant legal authority and otherwise being fully advised in the premises, the Court finds that the motion will be granted in part.

## I. BACKGROUND

This case arises from electrical transformers manufactured by the Defendant, Howard Industries, Inc. ("Howard"), which Plaintiff, Caribbean Utilities Company, Ltd. ("CUC"), alleges are defective. At issue presently is expert testimony provided by CUC's expert, Kenneth Lefoldt, Jr., a CPA who has provided opinions regarding CUC's damages in a report dated March 1, 2019 and who was deposed on May 15, 2019. He has opined regarding a method for quantifying the damages CUC has incurred because of transformers that were allegedly defective. It is Mr. Lefoldt's opinion that the remaining book value is an appropriate method for capturing the value lost, which he computes using a "straight line depreciation" approach. Straight line depreciation is calculated by taking the initial installed cost of an asset and spreading that cost equally throughout the presumed useful life of the asset. The net book value remaining when the asset is

taken out of service is arguably the amount of value in the asset that CUC was unable to realize and for which it seeks recovery.

In his report, Mr. Lefoldt assumed a 30-year life expectancy[1] for the transformers and for his damage calculations presumed that the 3,856 Howard pole-mounted transformers[2] and the 582 pad-mounted transformers[3] at issue were taken out of service by December 31, 2016.[4] However, deposition testimony from CUC corporate representative, David Watler, reveals that as of March 7, 2019, there were only approximately 1,000 pole-mounted transformers that had been taken out of service.[5] CUC's Clifton Rose testified that when he left CUC in August 2018, the removal of Howard pad-mounted transformers had not begun. CUC's expert, Bastiaan E. Cornelissen testified that in about May 2019 he observed close to 200 pad-mounted transformers "all over the island."[6] CUC states in its opposition brief that the replacement of all Howard transformers is currently scheduled to conclude "around 2021 or 2022." [122] at p. 2. Mr. Lefoldt testified, "this is ---a snapshot is a point in time. I think as we get closer to trial, I think my numbers would have to be revised to reflect the reality of what's actually . . . taking place up until trial." [106-2] at 41:1-20.

Howard argues that Mr. Lefoldt was required to provide a complete statement of all of his opinions pursuant to Federal Rule of Civil Procedure 26(A)(2)(B)(i). The report was inaccurate at the time it was authored, and because of that, Mr. Lefoldt's opinions should be excluded. CUC

---

[1] Mr. Lefoldt also did calculations based on a 20-year and 25-year life expectancy. It also appears that he presumed that all transformers were in service beginning on January 1 of each year.
[2] The total damages amount listed in Mr. Lefoldt's report [106-1] at Exhibits B, C, and D for the pole-mounted transformers were derived from the spreadsheets at [114-19] and [114-20], which show the straight line depreciation calculation for 3,856 transformers.
[3] The damages for the pad-mounted transformers were derived from the spreadsheets at [114-21] and [114-22], which show the straight line depreciation calculation for these 582 transformers.
[4] These are all of the transformers at issue, which the spreadsheets show are all of the Howard transformers installed between 2000 and 2016.
[5] [106-4] at 12:18-21 (Deposition of Watler). This fact is conceded by CUC. [122] at pp. 1-2.

responds that Howard's motion is untimely; that there is no basis for excluding Mr. Lefoldt's testimony regarding the methodology used; no supplementation was required; and that Mr. Lefoldt's testimony as to the damage numbers, while helpful to the jury, is not required.

## II. ANALYSIS

### A. Timeliness of Howard's Motion

CUC argues that Howard's motion is untimely because it did not challenge the adequate disclosure of the expert witness within the thirty days before the discovery deadline as required by Local Uniform Civil Rule 26(a)(3). However, CUC's argument misses the mark. Howard is not complaining that the disclosure of Mr. Lefoldt was either improper or incomplete. The disclosure apparently was done appropriately. The gravamen of Howard's complaint with Mr. Lefoldt's opinions is that they are unreliable and CUC is now precluded from supplementing. Parties may challenge other parties' experts prior to the deadline set forth for dispositive motions, which Howard has done. On May 31, 2019, the deadline for dispositive motions was reset to July 8, 2019 [98]. Howard's motion challenging these opinions was filed on July 8, 2019. Therefore, the motion is not untimely.

### B. The Reliability Mr. Lefoldt's Opinions Regarding Total Damages

#### 1. Proper Standard

Howard argues that Mr. Lefoldt's opinions of multi-million dollars in losses should be excluded because they are inaccurate in that they do not reflect the reality of the situation based on testimony from CUC's own representatives. The Court finds that the argument is one of reliability. When evaluating expert testimony, the overarching concern is whether the expert testimony is "relevant" and "reliable." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227

---

[6] [106-5] at 18:3-19:20 (Deposition of Cornelissen).

(5th Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). The standards set forth in *Daubert* fittingly align with Federal Rule of Evidence 702, which states that an expert witness may testify

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[7]

Expert testimony "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Pearson v. Wal-Mart Stores, Inc.*, No. 2:17-CV-144-KS-MTP, 2019 WL 2373201, at *2 (S.D. Miss. June 5, 2019) (quoting *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009)).

"Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Id*. "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Id*. (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 354 (5th Cir. 2007)). The burden is on the proponent of the expert's testimony to establish the admissibility requirements by a preponderance of the evidence and prove by that same standard that the testimony is reliable. *Paz v. Brush Engineered Materials, Inc*. 555 F.3d 383, 388 (5th Cir. 2009); *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

---

[7] Although Howard's argument is not argued specifically under Rule 702, the Court, as the gatekeeper of evidence, is allowed "to evaluate expert testimony *sua sponte* and exclude such testimony where appropriate." *Accident Ins. Co. v. Classic Bldg. Design, LLC*, No. 2:11-cv-33, 2012 WL 3913090 at *14 (S.D. Miss. Sept. 7, 2012).

4

## 2. Analysis of the Reliability of Lefoldt's Damage Calculations

The parties agree that there is no dispute with Mr. Lefoldt's methodology regarding straight line depreciation being an appropriate method for calculating damages. The parties also appear to agree that the formula used in calculating such depreciation is proper. The issue, plain and simple, is the accuracy of the results. Howard argues that Mr. Lefoldt should not be able to convey to the jury the damage numbers in his report because the numbers are inaccurate, and the numbers are inaccurate because they are based on insufficient and/or erroneous information.[8] As Howard points out in rebuttal, both Mr. Lefoldt and CUC concede the numbers are not accurate. This is not a case where the damage calculation was accurate as of the time of the report and can be supplemented because the information has simply changed over time. CUC knew how many transformers had actually been removed from service (and the year of installation) as of the time that Mr. Lefoldt wrote his report, yet allowed him to issue a report with an inaccurate underlying factual assumption, i.e., that all transformers had been removed from service by December 31, 2016—a fact that CUC knew was inaccurate. As such, the Court finds that Mr. Lefoldt's current opinions regarding the total damage numbers are unreliable and inadmissible. Therefore, such opinions will be excluded from presentation to the jury.

However, CUC is correct in that there has been no basis for excluding Mr. Lefoldt's testimony with regard to his methodology and how damages should be calculated, and Howard concedes that the issue here is not the expert's qualifications or methodology. Therefore, Mr.

---

[8] Howard also states that CUC had a duty to timely supplement its disclosure under Federal Rule of Civil Procedure 26(e)(1)(A) when it learned of "additional or corrective information." Howard argued that the new information relating to Cornelissen's photographs of the pad-mounted transformers should have been provided to Howard and Lefoldt, but it was not done in violation of its duty to supplement. This argument makes no difference in the outcome. First, the duty to supplement expert reports is governed by Rule 26(e)(2); and second, the fact that there were still pad-mounted transformers in use in May 2019 was not new information. CUC knew that all of the pad-mounted transformers had not been taken out of service when Lefoldt wrote his report.

Lefoldt may testify as to the propriety of straight line depreciation as a measure of damages and the formula used to arrive at the remaining book value.

The determination of the propriety of any supplementation is premature. CUC has not supplemented or attempted to supplement the report, and there is no pending motion requesting to supplement. Also, with regard to CUC's response that expert testimony regarding the actual damage calculation is not required, the issue is premature. Howard's instant motion does not address this issue and to rule on such an issue now would be improper, as there are separate legal arguments to be made that have not been fully briefed and no such witness has been proposed.

**III. CONCLUSION**

For the reasons stated herein, the Court finds that the damages numbers as presented by Mr. Kenneth Lefoldt in his report dated March 1, 2019 are unreliable. Therefore, it is hereby ORDERED that Howard's Motion to Exclude Ken Lefoldt's Damages Opinions [106] is granted in part. Mr. Lefoldt is precluded from offering his opinions regarding the amount of CUC's total damages from both pole-mounted and pad-mounted transformers, as reflected in Exhibit B, C, and D of his March 1, 2019 report. Mr. Lefoldt may testify only as to the proper methodology and formula for calculating CUC's damages in this case. In all other aspects, the motion is denied without prejudice.

SO ORDERED AND ADJUDGED this 8th day of November 2019.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE